UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ROBERT B. MABRY, | ) | Case No. 04-54465-293 |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ROBERT B. MABRY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | Adv. No. 05-4143-293 |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION | ) | |
| NATIONAL PAYMENT CENTER, | ) | (Publish) |
| UNIVERSITY OF TEXAS SYSTEM | ) | |
| AND TEXAS GUARANTEED | ) | |
| STUDENT LOAN CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff, Robert B. Mabry, filed his Voluntary Chapter 7 Petition on

November 12, 2004, and received his discharge on February 23, 2005.[1]  He filed

---

[1] At the time this Adversary was filed, the Debtor was represented by an attorney.  Prior to the trial the attorney was granted permission to withdraw as the Debtor's attorney.  Thereafter, the Plaintiff represented himself.

1

this adversary proceeding, on November 12, 2004, seeking a determination that the student loan debts he incurred while attending Brown University (Brown) and University of Texas at Austin School of Law (U of T) were included in his discharge pursuant to 11 U.S.C. §523(a)(8).  In support of his position that excepting the student loans from discharge would work an undue hardship on the debtor, Mabry alleged:

> a)  Debtor, for the past three years has been the sole caretaker for his mother, who is now disabled from a brain tumor; there are no other relatives in the state of Missouri.
>
> b) Debtor has been unable to obtain employment commensurate with his college education, a degree in economics, and has been working full time as a social worker for Life Skills, a not-for-profit organization for the last three years.
>
> c) Debtor's employer has not given any raises in salary during the last three years; Debtor has attempted to maximize income and minimize expenses.
>
> d) Debtor's student loan balance is approximately ninety thousand dollars and under any of the repayment plans available, the repayment of the loans would work an undue hardship on Debtor; after deducting the minimal expenses this court has deemed necessary and reasonable. Debtor has no income with which to repay the loan.

Since Mabry demonstrated by a preponderance of the evidence that excepting the student loan debts from his discharge would impose an undue hardship on him,

the Court will enter judgment in favor of the Plaintiff.

**JURISDICTION AND VENUE**

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151 and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

**FINDINGS OF FACT**

This adversary proceeding was tried on May 12, 2008, and the Court makes the following findings of fact. Mabry was born on March 26, 1959, and is currently 49 years old. He never married and has no dependents. With the exception of a bad knee that occasionally bothers him, he is in good health, both physically and mentally. He is currently unemployed, penniless, homeless and receiving food stamps.

He graduated from Brown in 1982, with a Bachelor of Arts degree in Economics. He described himself as a good student. In addition, he studied a semester abroad at the University of Nigeria. While attending Brown, Mabry

received several student loans.  He testified he made some payments, but could not recall the amount of his payments; nor, did he have any written documents that would provide evidence of payments.  Periodically, he advised the lenders of his current address.  At some point, he defaulted on his loans and since these loans were guaranteed by the United States Government, they were held by the Defendant, the United States Department of Education (DOE).  Since Mabry no longer has any bank records or other documents concerning any of his student loans, he accepted the DOE's assertion that he was indebted to it in the amount of $48,688.20.  In fact, he commented that he thought he owed a larger sum.

   Upon completion of his college education, Mabry worked for a couple of years for American Express on Wall Street in New York City.   In order to enhance his career, he decided to pursue a graduate degree.   He was admitted to the U of T.  At the end of his first year, his grades placed him in the lower ten percent of the freshmen class.  The University's rules required the expulsion of any freshman who was not in the top ninety percent of their freshmen class.  In the summer following his first year, Mabry took a class in ethics.  His ethics grade was high enough to raise his freshman grade point average into the top ninety percent and enabled him to proceed to his second year.  Unfortunately, at some point in his second year, Mabry was "kicked out."

As a law school student, he sought and received a student loan from the U of T. It is unclear as to the time and amount the Plaintiff may have made payments to the U of T. As previously mentioned, he no longer had any bank records or other documents that would evidence such payments. However, the U of T provided an affidavit from the custodian of the records of Texas Guaranteed Student Loan Corporation that indicated that as of June 1, 2008, the Plaintiff owes the U of T $34,369.73. Mabry did not challenge the accuracy of the amount due. In fact, in Schedule F of his Voluntary Chapter 7 Petition, dated November 13, 2004, he acknowledged two debts to U of T, totaling $32,030.58.

Mabry testified that attending law school was stupid. It left him broke, in debt and unable to obtain professional employment at such places as A. G. Edwards, Jones and Company or various banks. As a result, he began a long career of part-time work as a bartender and waiter. As the years passed and he continued with part-time work, he concluded that his college degree lost some of its value in obtaining a professional position.

Eventually, he started a packaging business with a friend in St. Louis, which lasted approximately nine years. Since his company was not always in production, he continued his part-time employment in order to have sufficient money to cover living expenses. He was young and motivated by a desire to make a lot of money.

In fact, he even thought that at some point in the future, his business would flourish and he projected earnings as high as $250,000 a year.  Unfortunately, those dreams were dashed, when his primary customer, 3M Company (3M), changed its product from plastic trays to paper board.  Mabry purchased a lot of equipment and basically tailored his production line to meet 3M's original needs.   3M represented 70% of his business and when it switched to paper board, Mabry's packaging business collapsed.

   In the years that followed, Mabry again attempted to utilize his college education by seeking employment in fields of finance and accounting, but no one would hire him.  He concluded the failure of his company and his part-time employment history  worked against him.  Even his prestigious college degree seemed to have less and less value as the years passed.  As a result, he continued part-time work at bars, restaurants and country clubs.

   In late summer of 2002, Mabry obtained a part-time job at Life Skills Foundation (Life Skills), which developed into a full-time job.  He worked with handicapped and mentally retarded people integrating them into the community to live as independently as possible.  Mabry found the work extremely rewarding and felt that he found a position he was willing to do for the rest of his life.   He became a program supervisor, earning $10.38 an hour.  However, he was limited in

6

advancement since he did not have a master's degree in social work.  The job lasted four years and ended as a result of his arrest and incarceration.

The record is somewhat vague concerning Mabry's arrest and its impact on his employment.  He was arrested and charged with seven misdemeanors.  Apparently, he was acquitted on several charges and at least one charge was dismissed.  Ultimately, at a second trial, he was found guilty of three misdemeanors, which are currently on appeal.   When he was released from jail, he tried to return to his job at Life Skills.  A new boss informed Mabry that he failed to notify Life Skills that he was available to return to work within a required period of time.  As a result, he loss his job.

Mabry testified that when he was released from jail, he was convincedthat he could earn $25,000 a year.  However, after applying unsuccessfully to 40 restaurants, he has concluded that earning $25,000 per year is unrealistic.  The restaurants were not only not hiring, they were laying off employees.  At the time of the trial, Mabry testified that he was homeless and unemployed.

Mabry was evicted from his apartment and his personal records disappeared while he was incarcerated.  All that remained was a ten-year-old computer and the clothes he was wearing.  As a result of the loss of his personal property, he claims he could not provide various documents requested by the defendants.   The Social

7

Security Administration did provide him with the following earnings record:

| Years Worked | Taxed Social Security Earnings | Years Worked | Taxed Social Security Earnings |
|---|---|---|---|
| 1975 | $ 2,092 | 1990 | $   845 |
| 1976 | 3,453 | 1991 | 359 |
| 1977 | 2,270 | 1992 | 1,114 |
| 1978 | 986 | 1993 | 4,147 |
| 1979 | 2,187 | 1994 | 9,410 |
| 1980 | 3,658 | 1995 | 9,254 |
| 1981 | 4,454 | 1996 | 8,102 |
| 1982 | $ 9,750 | 1997 | $ 8,056 |
| 1983 | 19,348 | 1998 | 13,674 |
| 1984 | 15,782 | 1999 | 13,833 |
| 1985 | 5,488 | 2000 | 13,620 |
| 1986 | 7,131 | 2001 | 15,397 |
| 1987 | 1,672 | 2002 | 15,289 |
| 1988 | 5,348 | 2003 | 24,928 |
| 1989 | 1,370 | 2004 | 22,483 |

Mabry's Exhibit 2, PEBES Online Response, dated December 5, 2007, also provided the following additional information concerning his earnings:

    2005    $23,338
    2006     10,611
    2007          0

It should be noted that Mabry's income in 2002 and 2003 was a combined income he received from Life Skills, Glen Echo Country Club and Norwood Hills Country Club.

8

In 2002 and 2003, Mabry earned $3,340 and $21,411 respectively from Life Skills and the balance was earned as a waiter and/or bartender at the country clubs. In 2004 and 2005, his income was solely from Life Skills.

In his complaint, Mabry asserts that he was the sole caretaker of his mother and this fact should be accepted as support for his argument that the repayment of the student loans causes an undue hardship on him. When questioned, he admitted that he never provided his mother with financial support. He occasionally lived in her home, paid rent and shared expenses, which provided indirect financial assistance to her. He was not with her during the day and often not at night. She was obese and suffered from various health problems such as a hernia and a brain tumor. When her mental stability began to deteriorate, he convinced her to sell her home and move into an assisted living facility. Since Mabry only occasionally lived with his mother, it is a stretch to conclude he was her sole caregiver. He was gone during normal working hours and often stayed elsewhere at night. As a resident of an assisted living facility, Mabry's mother does not receive any financial assistance or physical care from him. Mabry is not and probably never was his mother's sole caregiver.

Mabry failed to provide evidence as to what are his normal and reasonably anticipated living expenses. He does not contribute to any of his mother's expenses and since he never married and does not have dependents, his living expenses are

9

solely his own. Since Mabry received a discharge, he is no longer personally liable for the approximate $29,000 in credit card debt that he listed in his Schedules. The only other debts that were listed were the student loan debts. He insisted that he has always lived a frugal life and often shared apartments to minimize his expenses.

After reviewing the various motions, briefs and other documents filed and presumably drafted by Mabry and having observed his demeanor and conduct in court, the Court concludes that he is intelligent and articulate.

## CONCLUSIONS OF LAW

*A.    Introduction*

Section 523(a)(8) of the Bankruptcy Code (Code) states in relevant part that any student loan made, insured or guaranteed by a governmental unit is excepted from discharge "unless excepting such debt from discharge...would impose an undue hardship on the debtor." The debtor has the burden of establishing such undue hardship by a preponderance of the evidence. *Cumberworth v. United States Dept. of Ed. (In re Cumberworth)*, 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006). Also, the Court should examine the debtor's circumstances as of the date of the discharge in making the undue hardship determination for purposes of §523(a)(8). *Woodcock v. United States Dept. of Ed. (In re Woodcock)*, 326 B.R. 441, 447 (B.A.P. 8th Cir. 2005). The

Code does not define what constitutes "undue hardship." In this Circuit, however, the undue hardship analysis is fact intensive and requires the bankruptcy court to examine the totality of the circumstances of the particular case. *Long v. Ed. Credit Mgmt. Corp. (In re Long)*, 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003). The bankruptcy court should examine the following factors in conducting the totality of the circumstances analysis: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's reasonably necessary living expenses; and (3) any other relevant facts and circumstances that are present in the individual case. *Id.* The principal inquiry, however, must focus on whether the debtor's reasonably reliable future financial resources will be sufficient to both cover the debtor's obligation on the student loans and provide for a minimal standard of living. *Fahrer v. Sallie Mae Serv. Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).

This is a difficult case and arguments can be made to support the positions of all the parties. Congress created the student loan debt exception to discharge "to prevent abuse of the bankruptcy process by undeserving student debtors." *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127 (B.A.P. 8th Cir. 1999). After examining all of the evidence adduced at trial, the Court concludes that the harsh reality of this case supports Mabry's position. He has not abused the

bankruptcy process and he has established by a preponderance of the evidence that excepting his student loan obligations from his discharge would impose an undue hardship on him.

B.   *The harsh reality is that Mabry's prospects for obtaining meaningful employment are highly unlikely and questionable at best.*

As illustrated above, despite the fact that the Plaintiff is a 1982 graduate of Brown, a prestigious Ivy League school, his total work history can best be described as a mixed success.  Apparently, his first job following graduation was a success.  He worked for American Express on Wall Street and earned nearly $20,000 in 1983.  Mabry's departure was motivated by his desire to improve himself by obtaining a graduate degree.  Unfortunately, in the years that followed he was "kicked out" of the U of T during his second year, ran a failed business and was both unemployed and/or underemployed for a significant portion of his life.

Many would assume that his degree from Brown would be a guarantee to lifetime successful employment.  Undoubtedly, that degree was a valuable asset in assisting him in finding a job with American Express in 1982.  However, Mabry argues, and the Court agrees, that twenty-six years later that same degree has lost some of its importance in obtaining a job.  Potential employers will want to know his work history in the intervening years.  A review of that work history clearly reveals a man who was unemployed or underemployed for many years.

His packaging business experienced a limited degree of success during its nine years. The record is unclear as to the exact dates that Mabry operated the packaging business. However, it was not until after he left law school in the mid-1980s. His annual income from 1986 to 1997 ranged from a low of $359.00 to a high of $9,410.00. Mabry's business failed not because of his conduct, but because a major customer decided to change its method of operation. As a result of this change, the customer no longer needed the product produced by the packaging business, which lead to its ultimate failure. It should be noted that the packaging business may have been promising, but it was not sufficiently successful to support Mabry and he was forced to continue his part-time employment as a waiter to support his personal expenses.

Mabry testified that he found his last job with Life Skills extremely rewarding. He was a program supervisor and looked forward to working in this field for the rest of his life. He began working at Life Skills in 2000 and the job lasted four years and ended as a result of his arrest and incarceration. He did not lose this job due to poor performance or any other work related factors.

The Debtor testified that in the eight weeks preceding the trial, he applied for employment with 40 restaurants. In each case, he was told they were laying people off.

**CONCLUSION**

The evidence adduced at trial establishes that Mabry is currently penniless, homeless, unemployed and receiving food stamps. In the twenty six years since he graduated from Brown, his work history has primary been that of a waiter and/or bartender in various restaurants, country clubs and bars. His attempt to return to the food and beverage industry has been met with total failure. A review of his earnings in the food and beverage industry reveals that even if Mabry could return to that work, his income would be insufficient to both cover his obligation on the student loans and provide for a minimal standard of living.

Given the totality of this evidentiary record, the Court finds that Mabry established by a preponderance of the evidence that excepting his student loan obligations from his discharge would impose an undue hardship on him as provided in §523(a)(8) of the Code. The Court finds, therefore, that the student loan obligations were included in Mabry's discharge under §727(a). Accordingly,

**IT IS HEREBY ORDERED** that judgment is enter in favor of the Plaintiff.

**IT IS FURTHER ORDERED** that any remaining pending matters in this adversary proceeding are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that a Judgment consistent with this Memorandum Opinion will be entered this date.

DATED: November 21, 2008

St. Louis, Missouri

/s/ David P. McDonald
David P. McDonald
United States Bankruptcy Judge

Copy mailed to:

Robert B. Mabry
PLAINTIFF
c/o Allanda Rinehart
2800 Olive St #10L
Saint Louis, MO 63103

Nicholas P. Llewellyn
COUNSEL FOR U.S. DEPARTMENT OF EDUCATION
Assistant United States Attorney
Chief, Civil Division
Office of the United States Attorney
111 S. 10th St., Room 20.333
St. Louis, MO 63102

Wesley D. Wedemeyer
COUNSEL FOR U.S. DEPARTMENT OF EDUCATION
Assistant United States Attorney
Office of the United States Attorney
111 S. 10th St., Room 20.333
St. Louis, MO 63102

Traci L. Cotton
COUNSEL FOR UNIVERSITY OF TEXAS SYSTEM
The University of Texas System
Office of the General Counsel
201 West Seventh Street
Austin, TX 78701

Fredrich J. Cruse
COUNSEL FOR TEXAS GUARANTEED STUDENT LOAN CORP.
The Cruse Law Firm
718 Broadway
PO Box 914
Hannibal, MO 63401-0914